568 A.2d 1235

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Leslie C.X. BEASLEY, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 26, 1989.

Decided Jan. 26, 1990.

---

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Chief, Appeals Div., Helen Kane, for appellant.

Hugh C. Clark, Philadelphia, for appellee.

Before LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented in this case is whether the Superior Court erred in setting aside the appellee's sentence of death, because of prosecutorial remarks about the appellate process made in closing argument during the penalty phase of the trial.

Appellee, Leslie Beasley, was convicted by a jury of first degree murder and sentenced to death. On direct appeal this Court affirmed the judgment of sentence. *Commonwealth v. Beasley*, 504 Pa. 485, 475 A.2d 730 (1984). On August 26, 1984, Beasley filed a collateral appeal under the post conviction hearing act (PCHA) which was denied by the

trial court. Beasley appealed the trial court's order to the Superior Court.[1] Upon determining that defense counsel was ineffective in failing to object to the prosecutor's remarks about the appellate process, and that such remarks were "inherently prejudicial", Superior Court, 377 Pa.Super. 64, 541 A.2d 1148, set aside Beasley's sentence of death. The Commonwealth petitioned this Court for allowance of appeal. We granted allocatur and now reverse.

In his appeal to the Superior Court, Beasley argued that the following remarks of the prosecutor were objectionable:

Now, considering that, that is all I ask you to do and I ask you to remember this. The same law, the very same law that I was held and restricted and guided by in order to put my evidence, on, in order to in fact, which prevented the introduction of that murder, the same law that will provide this particular defendant with merit, with numerous, with almost endless appeals to all levels in the court system in this case, and he has a right to all of those appeals, an absolute right to all of them, when, can you remember was the last—to let you know now about the appeals, when, can you remember was the last person who was executed in Pennsylvania? When?

N.T. April 6, 1981, pp. 1694–1695.

In *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) the United States Supreme Court set forth a standard for determining when remarks about the appellate process, made during the penalty phase in a capital case, constitute reversible error. That Court concluded that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere". *Id.* at 328–329, 105 S.Ct. at 2639–40.

---

**1.** The Post Conviction Hearing Act (PCHA) has since been repealed and re-enacted as the Post Conviction Relief Act. (PCRA) P.L. 336, No. 47 § 3, 42 Pa.C.S.A. § 9541 et seq. as amended, April 13, 1988. A final order under the PCRA in a death penalty case is no longer appealed to the Superior Court but is appealed directly to the Supreme Court. 42 Pa.C.S.A. § 9546(d).

Relying upon the United States Supreme Court's holding in *Caldwell*, this Court in *Commonwealth v. Baker*, 511 Pa. 1, 511 A.2d 777 (1986) held that prosecutorial remarks that "minimize the jury's sense of responsibility for a verdict of death" and "minimize their expectations that such a verdict would ever be carried out" constitute reversible error. *Id.*, 511 Pa. at 20, 511 A.2d at 787.

In *Baker* the prosecutor made the following objectionable remarks:

Let me give you an example when I say capital punishment and the rights of the individual. The last person that was executed in this state was Elmo Smith and his crime was in 1959; Mary Anne Mitchell in 1959, in Manyunk. Remember it? Well, it was in the newspapers. He was the last person that was executed in 1963. *You get an appeal after appeal after appeal, if you think the Supreme Court is going to let anybody get executed until they're absolutely sure that that man has a fair trial make no mistake about that.* I'm not going to go any further.

I just want you to understand that once you leave, that this man is not going to have the switch pulled in a matter of hours. That just doesn't happen. It goes on and on and on. I'm not going to sit here and tell you what the system is all about.

... but just understand this, no matter what your decision is, ladies and gentlemen, it will be and I can assure you as much as I am standing here right now, there will be considerable time and considerable appeals to be before any kind of finality occurs in this particular action.

*Id.*, 511 Pa. at 20–21, 511 A.2d at 787 (emphasis added). In *Baker* we concluded that since the jury had reported that it was hopelessly deadlocked and later, but before the verdict had been rendered, had asked the trial judge whether aggravating and mitigating circumstances had to be weighed in considering a life sentence, the reluctant jurors might well have been swayed toward the death penalty

because of the remarks of counsel for the Commonwealth. Thus, we set aside the death penalty and remanded the case to the trial court for the imposition of a life sentence.

Subsequent to our decision in *Baker*, this court addressed this same issue in *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989). In *Abu–Jamal*, we held that the following remarks "did not create a risk that the jury would abdicate 'the awesome responsibility' of deciding the appropriateness of the sentence of death" and thus, affirmed the sentence of death. *Id.*, 521 Pa. at 210, 555 A.2d at 854. The prosecutor in *Abu–Jamal* stated as follows:

> [Y]ou as a unit are in a position of deliberating and reaching a decision and *a decision of finality to a certain degree.* If your decision of course were to acquit, to allow the Defendant to walk out, that is fine. There is nothing I can do and there is nothing that the judge or anyone could do that would affect that in any way.
>
> *If you would find the defendant guilty of course there would be appeal after appeal and perhaps there could be a reversal of the case, or whatever, so that may not be final.* Nonetheless the action which you have is immense, extremely important.

*Id.*, 521 Pa. at 206, 555 A.2d 854. In *Abu– Jamal* we determined that each case involving prosecutorial remarks about the appellate process must be evaluated in light of the circumstances peculiar to that case. In so evaluating *Abu–Jamal* we distinguished it from *Baker* on three bases:

1) Absent from the remarks in *Abu–Jamal* were statements that the Supreme Court would not let anyone be executed until absolutely certain that the defendant received a fair trial.

2) In *Abu–Jamal*, unlike *Baker*, the remarks were invited by the defense counsel's argument, were within the bounds of proper response and did no more than suggest that the jury's decision, was part of the law that governs the case.

3) In *Abu–Jamal* unlike *Baker* the jury did not report that it was "hopelessly deadlocked" on the proper sen-

tence, did not indicate confusion concerning aggravating and mitigating circumstances and thus the "potential was not great that a wavering juror might assent to a verdict" because he believed the Supreme Court would re-examine it.

In evaluating the prosecutor's remarks in the present case,[2] in light of its particular circumstances, it is clear that the Superior Court erred in setting aside the sentence of death. Although the remark that Beasley would have "endless appeals to all levels of the court system," and the reference to the last execution in Pennsylvania, were irrelevant and unnecessary, they did not lessen the jury's sense of responsibility as the ultimate arbiter of the sentence to be imposed. Like *Abu-Jamal*, the present case is distinguishable from *Baker*.

First, the prosecutor here did not suggest that this court would make the final decision concerning the sentence to be imposed. Instead the prosecutor referred to the appeal process in general as it relates to the law that guides and governs the case. In fact, the prosecutor reminded the jury that the fact that Beasley had the right to appeal the case did not mean "that the effect of [its] vote is any less". N.T. April 6, 1981, p. 1695.

Second, the trial judge, in his charge, impressed upon the jury that it was not merely recommending a punishment but was "fixing the punishment at death or life imprisonment":

Now the verdict is for you, members of the jury. Remember that you are not merely recommending a punishment. The verdict you return will actually fix the punishment at death or life imprisonment.

N.T. April 6, 1981, p. 1719.

Third, the prosecutor's remarks could not have affected the verdict. Following closing arguments, the jury deliberated and unanimously found no mitigating circumstances and two aggravating circumstances: (1) that the victim was

---

**2.** We note that the prosecutor in this case was the same prosecutor in both *Baker* and *Abu-Jamal.*

a police officer killed in the performance of his duties, 42 Pa.C.S.A. § 9711(d)(1); and (2) that the defendant had a significant history of felony convictions involving the use or threat of violence to the person, 42 Pa.C.S.A. § 9711(d)(10). (This would mark Beasley's third conviction for homicide and second death sentence.) Under this scenario, the sentence of death was mandated by statute—the jury having never engaged in the weighing process, required by statute, in a case where the jury finds both aggravating **and** mitigating circumstances.[3] Moreover, this is not a case like *Baker* where the jury displayed confusion as to whether aggravating or mitigating circumstances had to be weighed in considering a life sentence and where the chance was great that a hesitant juror may have acquiesced in the imposition of the death penalty.[4]

We reverse the order of the Superior Court and reinstate the sentence of death.

NIX, C.J., did not participate in the consideration or decision of this case.

ZAPPALA, J., filed a concurring opinion.

**3.** Our Sentencing Code provides as follows:
> The verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance specified in subsection (d) and no mitigating circumstances or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.

42 Pa.C.S.A. § 9711(c)(iv).

**4.** Notwithstanding the fact that there was no prejudice in this case, we find that comments about the appellate process directed to the jury during a criminal trial are totally irrelevant to any issue involved in such proceeding. Whether prosecutorial remarks result in a finding of prejudice in some cases and not in others, appellate review is nevertheless, necessitated each time a prosecutor utters a remark about the appeal process. This wastes judicial time, and resources—all for naught. Therefore, we now, pursuant to our supervisory powers, adopt a per se rule precluding all remarks about the appellate process in all future trials. We do so in the interest of justice, judicial economy and integrity of the system and to provide clear-cut guidance to trial judges and members of the bar.

ZAPPALA, Justice, concurring.

I concur in the judgment.

In *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989), we went to some lengths to demonstrate that the prosecutor's remarks were reasonable response to defense counsel's arguments. I find no similar circumstance here. In *Abu–Jamal* we further found that the prosecutor's argument, as a whole and in context, did not create a risk that the jury would abdicate to the reviewing courts its responsibility to determine sentence. Here, the prosecutor's argument was tainted throughout, even incorrectly suggesting to the jury that a life sentence carried the possibility of parole. Nevertheless, because the jury ultimately found two aggravating circumstances, which were incontestable matters of fact, and no mitigating circumstances, the sentence of death was required under 42 Pa.C.S. § 9711(c)(iv), and cannot be said to be a product of the prosecutor's improper remarks. See *Commonwealth v. Crawley*, 514 Pa. 539, 559–60, 526 A.2d 334, 344–45 (1987).